## SAME CASE, ON A RE-HEARING.

ROST, J. We held, in this case, that if *Lockett* had been present at the trial, he might have waived any legal objection to the evidence offered by Mrs. *Toby* to establish her title, and that, as he ought to have been present, the admissibility of the evidence offered against him must be tested by the same rules as though he had been present, and we would not supply objections to testimony which he had neglected to make, in opposition to the probable truth of the case.

It is urged that there is error in this ruling, on two grounds:

1st. That even if *Lockett* had been present at the trial, and had consented to admit that evidence, it was the duty of the Judge *ex officio* to reject it.

2d. That, if the evidence offered would have been admissible with the consent of *Lockett*, he was absent, did not actually give, and cannot in law be presumed to have given, that consent.

The 11th Article of the Code lays down the general rule that individuals may renounce what the law has established in their favor, when the renunciation does not effect the rights of others, and is not contrary to the public order or good morals.

It is clear that the rights of third parties could not have been affected by the consent of *Lockett* to admit the evidence. What is done in this suit is to them *res inter alios acta*. *Babineau* v. *Cormier*, 1 N. S., 459.

It is equally clear that such a consent, so far from being against good morals, would have been, as the result has shown, in furtherance of justice and truth. The only question, then, on this part of the case is, whether the law providing that no parol evidence of verbal sales of real estate shall be admitted, is a law made for the preservation of public order, from which individuals cannot derogate by their conventions? And here it must be premised that the class of laws considered as affecting public order, is not the same in all countries, but varies in each, according to their institutions, the degree of freedom which they enjoy, and the system of jurisprudence by which they are governed. A comparison between the registry laws of Louisiana and those of our sister States, will illustrate our meaning. With us, those laws are considered as founded on public policy, and the want of registry cannot be supplied. In the other States they are viewed differently, and notice in any form is held to be equivalent to registry.

Many authorities have been adduced to show that in France, whenever the law prohibits the reception of testimonial proof, the prohibition is considered as addressed to the Judge, and that he is bound to reject it, without regard to the consent of parties. This proposition is too general in its terms. It takes for granted that all such prohibitions are founded on motives of public order; and if this should be true, under the laws of France, it does not necessarily follow that it is equally true in Louisiana. The French jurists, in applying this rule of interpretation to Art. 1341 of the Napoleon Code, merely followed the previous jurisprudence of the country, under the *Ordonnance de Moulins*, and the subsequent ordinance of 1615. The same expressions are used in the ordinances and in the Code. Both say: "*Il ne sera reçu aucune preuve par témoin,*" etc. Art. 1715 of the same Code again repeats: "*La preuve par témoin ne peut être reçue.*" From the identity of the expressions used, it is manifest that the authors of the Code intended to make no change in the law, and as it had heretofore been considered that these prohibitions concerned not only the parties interested, but the public at large, it is now held in France to be the duty of the Judge to enforce them, without regard to the waiver of parties.

But how was it with our legislators when they first introduced analogous prohibitions in the Code of 1808 ? Did they intend to make a radical change in the jurisprudence of the country, and to consider as made for the preservation of public order, laws without which public order had been maintained from the foundation of the Spanish monarchy ?

It is well known that under the laws of Spain, which governed Louisiana at the time of the cession, sales of real estate could be proved by parol, and whether or not they were reduced to writing, was a matter for the consideration of the parties, in which the public was supposed to have no interest.

When, in the case of *Babineau* v. *Cormier*, the question first arose, under the old Code, whether testimony affecting the title to land which had been given in the District Court without any objection to its introduction, should be disregarded on the ground that it was illegal evidence, the court might, perhaps, by a strict adherence to the letter of the law, have adopted the principle of the law of France. But it was more logical to disregard the foreign interpretation, and to expound the law so as to make it harmonize with the settled jurisprudence of the country, as the French jurists had done. It was accordingly held, that parties have a right to acknowledge a parol contract for land, and to consent that their stipulations in regard to it may be proved by oral evidence.

The same principle has been recognized under the new Code, in the case of *Strawbridge* v. *Warfield*, 4 L. R., 22. In that case, the court says : "The Judge of the court of the first instance considered the verbal sale of the slave was null; but we differ with him on this point. Under the provisions of our old Code, the jurisprudence of this court was well settled, that parties had a right to admit a parol contract for the sale of immovable property ; and that if they chose they might, as they did in this instance, admit parol evidence to prove it. The late amendment to the Louisiana Code has not changed the old Code, except in recognizing the validity of a verbal sale, and in establishing by their authority the doctrine that the exclusion of parol testimony in relation to contracts of the description of that before us, is a privilege which the parties may waive."

We think with our predecessors, that the recognition by the new Code of the validity of verbal sales of real estate, where the possession has passed to the purchaser, is conclusive as to  is right to establish it by all such evidence

as the vendor does not object to. It is to be observed that no such exception is found in the Code of France.

The jurisprudence of the State on this question is settled by these decisions, which appear to us well considered, and we adhere to them.

The authority from the English Common Law Reports relied on, is only applicable to cases of evidence illegal *per se*, which we consider the evidence in this case not to be. *Shaw* v. *Roberts*, 2 Starkie's Cases, p. 455; 3 Eng. Com. Rep., 486; 1 Starkie, p. 423, sec. 39.

The cases relied on in support of the second ground, are those of *Medley* v. *Wetzler*, 5 An., 217; *Louisiana State Bank* v. *Senecal*, 9 L. R., 226; *Michel* v. *Dolliole*, 1 An., 459.

The first was a judgment by default, in which we held that the District Judge had the right to refuse to act at an *ex parte* hearing upon testimony, irregularly obtained on commission by the plaintiff; but even in that case, which is the last decided, we reserved the question whether the Judge was bound to refuse such evidence.

The case of *Senecal* was also one of a judgment by default, in which the former Supreme Court held, that as the defendant had not appeared, no evidence could be legally given of a fact not alleged in the petition. The opinion of Judge Martin in that case is as follows: "The defendant having appealed from the final judgment, he seeks to reverse it in this court, and assigns, as an error apparent on the face of the record, that it is nowhere alleged that notice of protest was given to him.

"The counsel for the bank urges that notice may have been proved on the trial, and before obtaining final judgment. He further c ontends, that no defect of pleading can be assigned as error on the face of the record, which might be cured by legal evidence. This would be correct, if there had been a trial *on an issue made up by filing an answer*, for then the consent of the party might be inferred from the want of objection being made to the omission or defect. But in the absence of any defence, no evidence can be legally given of a fact not alleged in the petition."

This opinion draws clearly the line between trials on judgments by default and trials on issues made up by filing an answer. The reason of such distinction is obvious to all who occupy the judgment seat. Judgments by default generally occur in cases of claims for money. In them the defendant has never appeared, and is presumed to have no adviser; but after issue joined, both parties are held in law to be in court, and in almost every instance, the failure of parties, standing in the relation of defendants, to appear at the trial, by counsel or in person, is part of their strategy. If the practice is encouraged, all cases in which the defendant has either no defence at all, or such a defence as honorable and high-minded counsel are unwilling to carry through, will be left to the guardianship of the Judge. His high function of *custos morum* will cease, and he will become the protector of all fraudulent litigants who dare not face their adversary before the justice of the country.

Such a result must be avoided, and this can only be done by considering as actually present in court at the trial, all parties to the suit who have made themselves parties to the record by pleading. It was so held by our predecessors, in the case of *Kohn, Syndic, et als.* v. *Wagner et als.*, 1 Rob., 275.

We overlooked the distinction between cases of judgment by default and cases of issue joined, in the case of *Michel* v. *Dolliole*. What we said then was,

an *obiter dictum* not necessary to the decision, and having none of the requisites of a precedent. The admission of such evidence as might have been received with the consent of *Lockett*, if he had been present, is not, under the view we have taken of the case, an error of law, and the plaintiff cannot be relieved against it on an assignment of errors.

We think that there is nothing in the objection that the case was not fixed in the manner required by law, which is not fully answered in the opinion.

The re-hearing is refused.

SLIDELL, J. After some hesitation, I yield my own doubts to the opinion of my brethren upon the question of practice involved in this case; but, at the same time, I must say, I think a Judge, before whom a cause is tried, in the absence of one of the litigants, would more safely fulfil his duty by refusing to hear evidence clearly objectionable, particularly in suits involving the title of real property. The presumption in his mind, it would seem, should be that the party or his counsel is unintentionally absent, rather than the reverse. There is much good sense and justice in the maxim of the Roman law: *Litigatoris absentia dei presentia repleatur.*